JAMES R. BRASHEARS, Executor of THOMAS P.
ORME, *vs.* WALLACE G. ORME et at.

*Bills of Exception—Wills—Testamentary Capacity—Admissibility of
Evidence—Opinions of Witnesses—Attempted Suicide Not Evidence
of Insanity.*

When the answer to a question, which a witness is allowed to answer
after objection, is not set forth in the bill of exception, this Court will
not pass upon the competency of the question, since it cannot determine
whether the appellant was injured by the ruling of the trial Court or not.

When one bill of exception states that an objection to a question asked a
witness was made and overruled and an exception noted, and the fol-
lowing bill of exception states that "the witness then in answer to the
said interrogatory excepted to replies," etc., the two bills of exception
are sufficiently connected, and the second will be referred to for the
purpose of ascertaining the answer to the question contained in the first.

Upon the trial of an issue relating to the mental capacity of a testator, a
witness who had known him for many years, was asked if he consid-
ered the testatator to have been competent to execute a valid deed or
contract. *Held,* that the question is objectionable in form, since it
should have related to the capacity of the testator at the time he exe-
cuted the will in controversy.

A witness who had known the testator for fifty-five years, and had seen him frequently during that period, was asked upon the trial of a caveat whether the testator ever made any admissions as to his treatment of his wife on the first night after they were married. *Held*, that the question was competent in connection with other evidence as to the character of the testator.

One who is neither an expert nor an attesting witness to the will is not competent to express an opinion as to the mental capacity of the testator without first stating facts upon which his opinion may be adequately founded.

A witness stated that in response to testator's request to shoot him, "I shot at him with both barrels, the shot hitting about six inches above his head ; he never flinched, but said, 'Dick Sellman, I believe you are fool enough to kill me.' " The witness also stated that about twenty-five years before the will was made, the testator stabbed himself with a knife, and that the witness had noticed peculiarities about him. *Held*, that these facts are not sufficient to justify the admission of the testimony of the witness that in his opinion the testator was mentally incompetent.

The mere fact that a man attempted to commit suicide years before he made his will is not sufficient foundation for the opinion of a witness that he was mentally unsound at the time of the execution of the will, but evidence of the attempt is admissible in connection with other proof of incompetency.

Testimony reflecting upon the mental condition of the testator before and after he executed the will is admissible in connection with other evidence showing his condition at the time the will was made.

Evidence as to the religious belief of a testator is not generally admissible upon the question of his mental capacity, but in some cases is competent when it shows a vacillating, flighty mind.

Testimony that in conversation with the witness, the testator said he wished he was dead or could die, is admissible in connection with other evidence as to his psychological condition.

A witness stated that he had once on a road met the testator, who grabbed his horse and asked him what he was doing for his soul, saying that he himself was converted and invited the witness to dismount and pray ; that afterwards the decedent denied that this incident had occurred ; that on another occasion he asked the witness to kill him, saying that he would make a will leaving everything to witness and signed a paper exonerating him from blame, and that when witness refused to kill him, he burst out crying and said he had nothing to live for. *Held*, that this evidence, if the incidents referred to took place about the time the will was executed, is sufficient, in connection with the impression made by the demeanor of the testator upon the witness, to entitle him to give his opinion as to the testator's sanity.

When a question is asked that may elicit a relevant and material answer, but the answer in fact made is irrelevant, the proper course is then to ask the Court to strike out the question and answer and to instruct the jury not to consider them.

Appeal from the Circuit Court for Anne Arundel County (JONES, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*J. Wirt Randall* and *James R. Brashears,* for the appellant.

*Robert Moss* and *James W. Owens,* for the appellees.

BOYD, J., delivered the opinion of the Court.

This is an appeal from the rulings of the Court below on the admissibility of evidence offered at the trial of issues sent from the Orphans' Court of Anne Arundel County on a caveat to the last will and testament of Thomas P. Orme. Three issues were sent to the Circuit Court, but the first and third were abandoned, which left as the only one for trial : "Was the said Thomas P. Orme at the time of the signing of said paper writing purporting to be his last will and testament of sound and disposing mind and capable of executing a valid deed or contract?" The jury rendered a verdict in favor of the caveators and the appeal was taken by the executor named in the will. There are thirteen bills of exception in the record, but as the answers to the questions in the ninth, tenth, eleventh, twelfth and thirteenth are not given we cannot consider them, for when a question is permitted to be asked, we cannot determine whether it was prejudicial to the party objecting, unless the answer appears in the record. It has, therefore, been held in a number of cases that this Court will not review the ruling of the Court below when the answer to a question, which has been allowed, is not stated. Among others are *Lawson* v. *Price,* 45 Md. 133, and *Devoe* v. *Singleton,* 80 Md. 68.

It was also contended on the part of the appellees that the first and third exceptions could not be considered, because the answers to the questions were given in the second and fourth bills of exception, respectively, and they were not sufficiently connected.   It is true that bills of exception "must be considered wholly distinct from each other, unless they contain sufficient words of connection," *Armstrong* v. *Thruston*, 11 Md. 157.   But these were sufficiently connected.   The first states the question objected to, that it was overruled and that the ruling of the Court was excepted to and then concludes in the usual way.   The second begins by stating "The witness *then*, in answer to the said interrogatory excepted to, replied," etc.   The third and fourth are connected substantially in the same way.   Under the decision in *Rowe* v. *B. & O. R. R. Co.*, 82 Md. 493, and the cases there cited, those bills of exceptions were sufficiently connected to permit us to refer to the second to ascertain what was the answer to the question in the first and to the fourth to find the answer to the one in the third.   We must, therefore, consider the eight bills of exception.

Richard P. Sellman testified that he had known Thomas P. Orme for fifty-five years, he went to school and college with him, their houses were about a mile apart, and he saw the testator every day or two and was on friendly terms with him. After speaking of some incidents in his life, his characteristics, etc., he was asked, "Did Thomas P. Orme ever make any admissions to you as to his treatment of his wife on the first night after they were married," which was objected to and is the subject of the first bill of exceptions.   The answer to the question; which we need not state, reflected more on the character of the testator than the condition of his mind.   There is nothing in the record to show whether what he said was true or untrue, but if true, it indicated that he was a coarse, vulgar man, and, if he was, it would not necessarily throw any light on his mental condition.   But if he was not a man of that character, it would reflect upon the question at issue, as a man of perfectly sound mind would not likely speak of

such things concerning his wife, unless he was exceedingly coarse and vulgar, if not depraved. But it was possible that the question asked might have called for an answer that would have been relevant, as his treatment to his wife might have been such as would indicate that his mind was not sound at that time, and, as the Court could not know what answer would be given, it was not error to permit the question to be asked. Practically the same question was asked another witness, which is presented in the sixth exception, and what we have said is likewise applicable to it.

The witness Sellman, after answering the question embraced in the first bill of exceptions, stated that he spent days and nights at the house of the witness and they would also meet at a store, which was the postoffice. He was then asked, "From your knowledge of Thomas P. Orme, do you consider him to have been competent to execute a valid deed or contract?" which was objected to, but the Court permitted it to be answered, and that ruling is presented by the second bill of exceptions. The form of that question is objectionable. The issue before the jury was whether the testator was of sound and disposing mind and capable of executing a valid deed or contract, *at the time of executing* the paper writing purporting to be his last will and testament. The will is not in the record and its date is not given, except in the issues it is said to be dated the 20th day of December, 1890. Nor does the record show when he died, but the issues were framed on the 8th of October, 1900. The will was therefore apparently made about ten years before the death of the testator. A witness who knew a testator for fifty-five years might be of the opinion that he was not capable of making a valid deed or contract at some particular period or periods of his life, while he might, in his opinion, have been perfectly competent at other times. It cannot be necessarily inferred from the testimony that the witness considered Orme incapable of making a valid deed or contract throughout the whole time he knew him, for a part of the time he was at school and two years he was at St. John's College with him. Then he said the testator "had a

remarkable memory for horses ; he could tell you the pedigree of every horse he had ever heard of ; that the testator was himself a breeder of horses and dealt in horses." So it is not likely, that during all that time he considered him incompetent, and it is impossible to say from the question and answer that he referred to the time the will was made, or what time he did have reference to. It might result in great injustice in many cases to permit a question of that kind to be asked without fixing any time. In *Townshend* v. *Townshend,* 7 Gill, 10, cited by the appellees, the question was asked of a witness, who had known the testator for twenty-five years, as to his mental condition "during all the period of the witness' acquaintance with him." And our predecessors held that it ought to have been allowed. But there the witness' opinion during all the period of his acquaintance with the testator was asked for.

The fourth exception presents a similar question, but is still more objectionable. A witness had been asked to relate an incident that had occurred about four years after the date of the will, which he was permitted to do; and "the counsel for the caveators then asked the witness if, in his opinion, the testator was able to make a valid deed or contract ?" Although the witness had known the testator for over fifty years and spoke of a number of peculiar things he had done, one of them in 1889, it is impossible to say that he understood this question to refer to the date of the will or to what time it did refer, and following immediately after the inquiry about the incident which happened four years after that date, it might well have been understood by the witness to refer to the time of that incident and not to the date of the will, but no time was named. It is true, that on cross-examination the time might have been ascertained, but the question asked was not relevant, unless it reflected upon the testamentary capacity of the testator at the time he executed his will, and to permit a question, thus indefinite as to time, is calculated to mislead a fair witness and to give one who is not so, an opportunity to impose on the jury and it might mislead the jury. As reflecting

upon the mental condition of a party at the time of the act in question, evidence of the condition of his mind at other times, both before and after the act, may be admitted, but only for the purpose of enabling the jury to determine its condition at the time of the act. Although opinions of witnesses who are not experts are admissible under proper circumstances, it is a character of evidence that should be very carefully guarded and is liable to do great harm unless it is. A question calling for an opinion of that nature should be so framed that there can be no doubt as to the time it refers to and if it is not it should not be permitted to be propounded.

These questions are also objected to on the ground that sufficient foundation had not been laid to show that these witnesses were competent to express opinions on the subject of the testamentary capacity of the testator. There is unquestionably great danger in allowing witnesses to express opinions on such subjects unless they fully measure up to the standard required by law to make them competent to do so. Cases resulting in setting aside wills are apparently much more frequent than formerly and it may be owing in some measure to the fact that witnesses have been permitted to express their opinions too freely as to the capacity of testators. Jurors are sometimes greatly influenced by the opinions of witnesses they happen to know, and in whose judgment they have confidence, and such an opinion should not be based on insufficient evidence. There were only two incidents related by Mr. Sellman which could possibly indicate that the testator's mind may have been affected. One of them was that the testator asked the witness to shoot him, and the witness explained the transaction as follows : "I shot at him with both barrels ; the shot hitting about six inches above his head ; he never flinched but said, 'Dick Sellman, I believe you are fool enough to kill me.' " The latter remark certainly showed that the testator did not suppose that the witness would shoot at him and it would be rather a partial conclusion to reach to say that a party who would be thus shot at was mentally weak, but the one who did the shooting was of sound mind

and capable of passing on the sanity of the other. Then he said that a year or two before that "he stabbed himself with a knife, and about a year after that he tried it again." But that was "about the year 1865 or 1866"—a quarter of a century before the will was made, and there is nothing to show that he continued in that condition. It was said in *McElwee* v. *Ferguson*, 43 Md. 479, "But strange and unaccountable as the phenomenon may appear to most persons, the act of self-destruction cannot be judicially regarded as a proof *per se* of insanity. After all it is but a fact, together with all other facts in the case, from which the Court or the jury are to determine the testamentary capacity of the testator, not at the time of committing suicide, but at the time of the execution of the will in question." In that case the will was executed the day before testator committed suicide, but the Court sustained it. Such being the law, the mere fact that a man attempted to commit suicide twenty-five years before he made his will is not sufficient evidence to justify any one in reaching a conclusion that he was not, at the time of the execution of the will, capable of executing a valid deed or contract. If that be insufficient in law to declare a man insane, then a witness should not be permitted to give his opinion from that act alone. There is nothing else stated by this witness which tends to show insanity, for, as we have seen, the expression used in connection with the shooting incident shows that the testator in reality had no idea that the witness would shoot him, and the only other statement of the witness that could possibly have any bearing on the subject is that "he had noticed peculiarities about the testator." That is immediately followed by the statement of his knowledge of the pedigree of horses and the shooting and stabbing incidents. Apparently they were the peculiarities referred to, but if every man about whom some person, who had known him all his life, "had noticed peculiarities" is to be deemed incapable of making wills but few of them could stand such a test. It is true that a witness is not required to mention everything upon which his opinion is founded, but when there is nothing stated by him

which is sufficient in law to justify such an opinion he should not be permitted to express it. A non-expert witness must not only show that he was acquainted with the facts, but he must state the facts, as far as he can, and disclose what has led to his conclusions. We do not mean that he must quote the language or give every incident that transpired upon which he bases his opinion, for that would often be impossible, especially for a witness who knew the party for many years, but when the whole testimony of the witness fails to show any facts or fact to justify the conclusion reached by him, he should not be permitted to express an opinion. With the exception of the incidents we have mentioned there is nothing in the testimony of this witness, as given in the record, which could make the sanity of this man a proper subject for argument, much less justify the conclusion that he was insane. Under the law the presumption is that a testator is sane and no one not an expert, or witness to the will, is competent to express an opinion contrary to that presumption unless he first states facts which are sufficient to base an opinion on. We think therefore there was error to permit this question to be asked of the witness Sellman, because he did not show himself to be qualified to answer it.

If the question propounded to witness Lee had been confined to the specific times referred to there was evidence given by him which was sufficient to let him express an opinion. On one occasion Orme met him on the road, grabbed his horse and asked him what he was doing for his soul; he told the witness that he, Orme, was converted and asked the witness to get off his horse and pray. When witness afterwards spoke of the incident to him he denied it. Then again he asked the witness to kill him; that he would make a will leaving everything to him. When the witness asked him " what good would that do me, I would be hung," he replied that he would sign a paper exonerating him from blame and drew up such a paper and signed it. When the witness refused to kill him he burst out crying and said he had nothing to live for. That conduct was not such as we usually expect

from a rational man, and as the appearance, demeanor, etc., of Orme, and the impressions that would be made on the witness by such conduct could not otherwise be fully disclosed to the jury, the opinion of the witness could be given. If, therefore, the question had been so framed as to apply to such times, it would have been competent, but it was not, because it did not show to what time it referred.

We do not see any reversible error in the third exception. The question was asked if the witness remembered an incident that occurred about four years after the date of the will. As we have said, testimony may be offered reflecting upon the mental condition of the testator before and after the execution of the will, so that the jury can determine from all the facts as to his mental condition at that time. There was nothing in the answer that materially reflected upon the question, unless it was that he told the witness that he had been poisoned. If that was not true, but was merely a delusion, it had some bearing on the subject in controversy. The record does not show whether or not it was true, but the question might have called for an answer that was material and the Court could not tell what the answer would be. The proper practice is when a question is asked that may call for an answer which is relevant and material but the answer given is irrelevant and improper, to then ask the Court to strike out the question and answer, and if it be calculated to do harm the Court should instruct the jury not to consider it. That may sometimes result in getting something before jurors which they ought not to hear, but if the question be in proper form and may be relevant the trial Court cannot assume that the answer will not be.

Nor does the fifth exception present any reversible error. The witness was asked whether he had any talks with the testator on the subject of religion, the Bible and death. Evidence as to religious belief is not generally admissible, and if it refers to opinions on that subject which rational men might hold, it is not competent and is calculated to do harm. It might result in jurors being influenced by the fact that the testator had

different views from their own. But the witness merely replied that the testator was very fond of talking on those subjects and we cannot see that any injury was done by the question, even if it be conceded to be irrelevant. Under some circumstances such questions might be relevant. For example, in the seventh exception, the witness was asked what the testator would say on the subject of religion, and he replied "that sometimes the testator would believe in God, and the next day he would not." That would show such a vacillating mind as would be proper to be submitted with other facts in an inquiry of this kind.

In the eighth exception the question was whether any of the conversations the witness had with the testator related to death. He replied, "That the testator would say in such conversations that he wished he was dead, or could die." That of itself would not prove insanity, but it was a circumstance which showed the state of mind the witness was in, which might have reflected on other subjects. As we have seen, suicide is not itself evidence of insanity, but it is a fact to be submitted to the jury. If a man is anxious to die he is in a condition that does not usually prevail with men and might, in some cases, indicate a condition of mind that together with other circumstances, might reflect upon his testamentary capacity. A particular fact may, of itself, be weak and inconclusive testimony, but if it is anywise pertinent to the issue, it is generally admissible in connection with other evidence in the cause which it may help to make clearer or in some way apply to.

For error in the rulings included in the second and fourth exceptions the case must be reversed.

*Rulings reversed, cause remanded and
new trial awarded.*

(Decided June 13th, 1901.)