E. EVERETT LAWSON et al. *v.* WESLEY A. WARD.

*Testamentary Capacity—Undue Influence—Evidence.*

The admission of testimony that witness had found testator "hanging on a fence" and had taken him home, that the testator had claimed more rent from the witness than was due, and that one of the caveatees had stated that she was taking testator for a ride, when they were in fact going to the bank, where the will was made, *held* not reversible error, since this testimony, which

while standing alone, showed neither testamentary incapacity or undue influence, was such that its materiality could not well be determined until all the testimony was in.      pp. 97, 98

Testimony by caveators that testator would pass him on the street without recognition, and by other witnesses that testator changed about two months before the execution of the will, thereafter becoming angry when joked with, that he "acted like he did not know where he was," and that witness noticed a difference in testator's manner of collecting rent, he asking for two months' rent when only one month's was due, was not inadmissible as involving statements of impressions rather than of facts.      p. 98

On issues of testamentary capacity and undue influence in connection with a will giving all testator's property to his sister's children, statements by him months and years before the execution of the will, that his sister's children would get none of his property, were relevant.      pp. 98, 99

The exclusion of the caveatees' question to an undertaker, whether it was unusual for people to ask about costs for their own burial, as testator had done, if erroneous, was harmless.
     p. 99

The sufficiency of evidence such as of instances of forgetfulness, of uncleanliness, and strange behavior on testator's part, during two or three months before the execution of the will, as showing testamentary incapacity, must always be open to some question, since capacity to make a will is consistent with much strangeness of conduct and decay in the testator.      pp. 99, 100

The fact that the alleged mental condition was not a long established, characteristic, condition, but one supposed to have developed in the last six months of testator's life, and within three or four months of the execution of the will, made it necessary to consider whether the jury might infer from the evidence that it was an unchanging condition, and interfered with testator's capacity at the time of the execution of the will.      p. 100

Evidence that testator failed to recognize acquaintances, became lost in familiar surroundings, permitted his living quarters and clothing to become filthy, removed his clothes to an indecent extent in public, spent nights singing aloud, and ate

food from garbage cans, although contradicted, *held* sufficient, combined with testimony as to his confusion in collecting rents, attending to tax payments, and discussing his property affairs, to carry to the jury the question of lack of mental capacity.

pp. 100, 101

A finding of mental incapacity to make the will, based on sufficient evidence, renders it unnecessary to discuss on appeal rulings on the issue of undue influence. p. 101

*Decided April 8th, 1927.*

Appeal from the Circuit Court for Worcester County (BAILEY and DUER, JJ.).

Petition and caveat by Wesley A. Ward against E. Everett Lawson and others, devisees and legatees under an alleged will of Charles Christopher Ward, deceased. From rulings in favor of said caveator on issues as to the validity of said will, the caveatees appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*F. Leonard Wailes* and *Curtis W. Long,* with whom were *Wailes & Robins and Long & Johnson* on the brief, for the appellants.

*George H. Myers,* with whom were *Miles & Myers* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The caveatees in a contest on the validity of a will appeal from rulings on the trial of issues from the Orphans' Court of Worcester County, at the conclusion of which the jury answered that the testator lacked mental capacity to make the will, and that execution of it was procured by undue influence exerted upon him. The exceptions were taken to rulings on admission of evidence and on prayers for instructions.

The testator was a man between seventy and eighty years of age, living in Crisfield, a widower, without children or descendants, and having as his next of kin four children of a deceased sister and four of a deceased brother. All his property was devised and bequeathed in the will to his sister's children, and they are the caveatees and appellants, while the caveator and appellee is one of the brother's children. The testator lived alone for many years up to the last two months of his life, when he went to live with one of the caveatees. It is agreed by the witnesses that he was a man of miserly habits. He owned eight houses in Crisfield, from seven of which he collected rent, and had from $12,000 to $13,000 in bank at the time of the execution of the will. The will was prepared by an attorney, Mr. Lankford, on October 6th, 1925, upon instructions given by the testator that he wanted his property to go to his sister Nancy's children, and wanted other provisions as they were inserted, and was executed on the same day at the bank, where he was taken in pursuance of his own arrangement with Mr. Lankford, and in the presence of the three attesting witnesses only, that is, of the president and cashier of the bank, and Mr. Lankford. These witnesses were chosen by the testator. They testify to apparent soundness of mind at the time of execution.

The evidence to support the contention of mental incapacity consisted of instances of forgetfulness, unclean habits, and strange behavior during the few months before the execution of the will; and that to support the contention of undue influence consisted in association of the caveatees with the testator at or about the time of making the will, and after it, and attentions and assistance to him, in remarks by the testator as to his intention with regard to his property, and remarks by one of the caveatees. There was no testimony of manifestations of incapacity at the time of execution or within ten days or two weeks before, unless it be in testimony of physical weakness on the day of execution; and no opinions on capacity were offered by the caveators. And on the issue of undue influence the caveator's case stands not on direct evidence of its exercise, but on inference from the other facts already described.

The testimony is rather voluminous, and much of it is of slight importance, or none at all. For consideration of the exceptions pressed we have, however, the assistance of counsel in grouping the rulings, and they will be discussed as they have been grouped.

In a first group, of the first, seventh and fifteenth exceptions to rulings on admission of evidence, there is submitted a question which affects other exceptions as well, that of the admission of evidence of incidents in the life of the testator which are, in themselves alone, of doubtful materiality, but which might receive from other, subsequent testimony a construction which would make them material. The caveator was permitted to testify that he had gone toward the testator's residence in August, two months before the execution of the will, and had found him "hanging on a fence"; that when asked what he was doing there, said he wanted to go home, and then the caveator took him home and into his house. Another witness was permitted to tell of a dispute with the testator in which the latter claimed more rent than was due, and declined to take a check for the correct amount. A third witness testified to a remark of one of the caveatees, Mrs. Laird, that she was going to take the testator for a ride when, in fact, they were going to the bank, where the will was made. It is true, as the appellant urges, that these incidents might occur consistently with testamentary capacity and free will of the testator; standing alone, they do not amount to proof of either. But while the trial court must, in view of the false valuation which juries might place on such incidents, exclude them when they appear too trifling or immaterial, it is not always practicable to do this when the testimony is offered, because it may not appear then what the value of the testimony is; together with other proof it may have some materiality. Often the scrutiny which the court must give is possible only at the end of all testimony. Facts must, unfortunately, be produced piecemeal. *Davis v. Calvert,* 5 G. & J. 269, 304. The testimony questioned in these three exceptions seems to be of this nature; further evidence

would be needed to show its materiality or immateriality, and the court could not satisfactorily rule on it finally until, upon a demurrer to the whole evidence, or perhaps, upon motion to exclude, it could be weighed at the end of all the testimony. We, therefore, find no reversible error in the rulings in this group.

A second group, of the second, fourth, fifth and sixth exceptions, brings up an objection that testimony admitted is of mere impressions of witnesses rather than of facts, but we do not find it open to this objection. The caveator testified that the testator would pass him on the street without recognition, and that on a particular occasion the testator did not know the caveator or his companion, because he did not say anything. That seems to us to be a statement of fact, in the main. Another witness, after having stated that the testator, in the August and September before the execution of his will, became angry when joked about his dressing and place of abode, and about the enjoyment of his money by others, and had not acted so previously, was permitted to add that he first noticed a change in August, and this is objected to. This seems to us to be a statement of fact, for what importance there might be in it. Again the same witness was permitted to say the testator "acted like he did not know where he was." This statement should have been explained, but we think it states a fact of bewilderment in a common form, and might be admitted, as it was without error.

Still another witness was permitted to say that he noticed a difference in the testator's transacting the business of collecting rent. The difference was explained by the next answer, that the testator asked for two months' rent when rent for only one month was due, and refused to take a check for one month. So explained there seems to us to be no valid objection on the ground that the testimony is one of impression only.

The third, tenth, eleventh, and thirteenth exceptions are to the admission of testimony of statements by the testator

in months and years previous to the execution of his will, that children of his sister would not get any of his property. While some of these reported declarations were remote, and do not have any decisive effect on the issues, they are clearly relevant to them. *Griffith v. Diffenderffer,* 50 Md. 466; *Moore v. McDonald,* 68 Md. 321, 338.

Three exceptions, the twelfth, fourteenth and sixteenth, were taken to the admission of testimony of statements by one of the legatees, Mrs. Laird, made after the execution of the will, to the effect that she did not know of its execution. The materiality of this evidence is not apparent; even if it was not true that Mrs. Laird was ignorant of the will, her making the statement would seem to have no tendency to prove what it was offered to prove; undue influence on her part in procuring its execution. She may have been merely keeping her own affairs to herself. There is no evidence of circumstances which would give it any other, material bearing. We think there was error in these rulings, but we have not been able to see that the statements so admitted in evidence were of such importance that their admission might injuriously affect the case of the caveatees, and for that reason require a reversal and retrial.

The seventeenth and last exception to rulings on evidence is one to the exclusion of the caveatees' question to an undertaker whether it was unusual for people to ask about costs for their own burial, as the testator had done. As it was intended to show whether or not this action was, according to the special experience of undertakers, odd or abnormal, it would not have been error to admit this question, but the fact is one on which general experience would afford some answer, and for this reason we conclude that the exclusion of evidence was not harmful error, if it was error at all.

The remaining exception is to rulings on prayers for instructions on each of the issues of mental capacity and procurement of the execution of the will by undue influence, and it raises questions of legal sufficiency of the evidence only. On the issue concerning mental capacity of the tes-

tator, most of the evidence, as has previously been said, detailed instances of forgetfulness, of uncleanliness, and strange behavior on the testator's part, during the two or three months before the execution of the will; and the sufficiency of evidence of that nature, as proof of incapacity to make a valid deed or contract, must, as counsel for the caveator frankly recognize, always be open to some question because the simple capacity requisite for making a will may exist consistently with much strangeness of conduct and decay in the testator. *Mecutchen v. Gigous,* 150 Md. 79, 97; *Jones v. Collins,* 94 Md. 403. And the condition is, in this instance, not a long-established, characteristic condition, but one supposed to have developed in the last six months of the testator's life, and within three or four months of the execution of his will; and this fact makes it necessary to consider whether the jury might infer from the evidence that it was an unchanging condition, and interferred with the testator's capacity at the time of the execution of the will. *Birchett v. Smith,* 150 Md. 369, 377. There was no direct testimony of any abnormal condition just at that time. *Birchett v. Smith, supra.* The evidence, however, pictures a man who not only failed to recognize acquaintances, but became lost several times on the streets of Crisfield, in surroundings familiar to him, permitted his living quarters and his clothing to become almost indescribably filthy, took clothes off to an indecent extent in public places, and once appeared outdoors wholly naked, spent nights singing aloud; was at times uncertain whether it was day or night, and picked up cast-off food from garbage cans and elsewhere, and ate it. This testimony is not without contradiction. Testimony offered on the part of the caveatees showed the testator living the life of a miserly man, and showing effects of age, but orderly and capable of taking care of his affairs and of executing a will. His bearing and appearance as exhibited to witnesses who gave this latter testimony could hardly be reconciled with the incidents described by witnesses for the caveator. The jury

were, of course, at liberty to base their finding on the caveator's evidence, however, and that evidence depicts a man of abnormal behavior which we think a jury might find, according to ordinary experience, to be irreconcilable with judgment and understanding in a man of the amount and situation of his property, and with capacity for reflection and choice among persons to whom it might be left. *Meculchen v. Gigous,* 150 Md. 79, 86. And the frequency of the incidents, according to the testimony, was such that a jury might also, in our opinion, conclude that the condition of decay manifested by them was an unchanging one, continuing through the time of the execution of the will. There is evidence to confirm a conclusion that it would interfere with his capacity to make a valid deed or contract in testimony of confusion on his part during these last few months, in collecting his rents, and attending to his tax payments, and in discussions regarding property he owned. On the whole evidence, our opinion is that the trial court ruled correctly in referring to the jury the decision of the question whether the testator had been shown to lack the requisite mental capacity.

We find the evidence legally insufficient to support a finding of procurement of the will by undue influence, but as the finding that mental capacity to make the will was lacking requires that the caveat be sustained, whether the rulings on the remaining issue of procurement by undue influence were correct or not, it is unnecessary for this Court to discuss those rulings. *Hamilton v. Hamilton,* 131 Md. 508, 512.

*Rulings affirmed.*