616 A.2d 392

Kirk BRUCE

v.

STATE of Maryland.

No. 133, Sept. Term, 1991.

Court of Appeals of Maryland.

Dec. 10, 1992.

José F. Anderson and Michael R. Braudes, Asst. Public Defenders (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

This case is before us for the second time. A jury convicted the appellant, Kirk Bruce, of five counts of murder, six counts of use of a handgun in the commission of a felony, one count of attempted murder, one count of assault with intent to murder, one count of conspiracy to rob, and one count of conspiracy to commit murder. The day after the trial, a sentencing proceeding commenced before the same jury.

At the sentencing proceeding, the jury found Bruce to be a principal in the first degree in the murders of two of the victims, and returned a sentence of death for each of those murders. For the remaining counts, the trial judge sentenced Bruce to three life sentences without the possibility of parole, one life sentence, six sentences of twenty years, and one ten year sentence. All sentences were to be served consecutively.

Bruce filed a notice of appeal to this Court pursuant to Maryland Code (1957, 1992 Repl.Vol., 1992 Supp.) Article 27, § 414 and Maryland Rule 8–301. In *Bruce v. State*, 318 Md. 706, 569 A.2d 1254 (1990) (*Bruce I*), we affirmed Bruce's convictions but vacated his death sentence and remanded for a new sentencing proceeding. A new proceeding was conducted, with a new jury, at which Bruce was again sentenced to death. He now appeals from that result, again pursuant to Art. 27, § 414 and Rule 8–301.

We first review the relevant facts adduced at the sentencing proceeding, noting that some of the testimony was admitted in the form of the trial transcript from Bruce's first trial. At the sentencing, Colleen Grady testified that she was with Bruce on January 22, 1988. She overheard part of a telephone conversation in which Bruce was talking to Ian Henry, later a co-defendant in the murder prosecutions. In the conversation, Bruce talked about a robbery and mentioned two briefcases. Grady testified that Bruce talked about the Village in the Woods Apartments, where the murders ultimately occurred. During the conversation Grady observed Bruce point his finger like a gun and exclaim "I will kill him" and "Boom! Boom!" two or three times.

Several hours after this conversation occurred, police responded to a call of a shooting and entered an apartment at the Village in the Woods Apartments in Landover, Maryland. There they found five dead bodies. The body of Leonard Francis, also known as "Chief," was found next to his wheelchair in the dining room. Chief had three gunshot wounds including one execution-style wound to the side of his head. Lloyd Chambers, also known as "Donny," was found in the kitchen dead as a result of six gunshot wounds including one in the back of the head. Next to Donny was the body of Everton Mitchell, who died as the result of a gunshot wound to the back of the head. In a back bedroom, police found the bodies of Carlene Hamilton, also known as "Donna," with a gunshot wound to the top of her head, and Richard Williams, also known as "Ritchie," with eight gunshot wounds including one to the head. Police officers were met by Charmaine Chambers who had been shot twice in the head, but was still alive.

Ms. Chambers survived the shooting and was a witness for the State at Bruce's trial and sentencing proceeding. Chambers testified that she went to the apartment in the Village in the Woods on January 22, 1988 to visit her friend Donna. She knocked, and the door was answered by Carl Dunstrom, also known as "Fabulous." Chief, who was in

his wheelchair inside the apartment, instructed Fabulous to allow Ms. Chambers to enter. Once inside she saw Bruce, whom she had met before, and several other men. One of the men, Henry, was on the telephone. When Henry hung up, he produced a gun and grabbed Ritchie. Chambers testified that Bruce got up from his chair with a gun in his hand, grabbed Chief from his wheelchair, and removed a second gun from Chief's wheelchair. Fabulous was also armed with a weapon. Chambers then ran into a back bedroom where Donna was asleep. She heard shots and saw Ritchie run into the bedroom, and he was being pursued and shot at by Henry. Donna woke up, and she and Chambers tried to slide under the bed. More shots were fired, and Donna became silent. Henry then approached Chambers, grabbed her by the hair, and fired a shot at her head. Chambers lay on the floor and tried to appear dead while the gunshots continued. Fabulous then came into the bedroom, grabbed Ms. Chambers by the hair, and shot her again. The shooting stopped, and some time passed. Chambers crawled out of the apartment and went to a neighboring apartment to summon police and an ambulance.

Jacqueline Sellers, the girlfriend of Fabulous, was found to be unavailable at the sentencing proceeding and the State read her testimony from the transcript of Bruce's first trial. Sellers testified that on January 22, 1988, while the soap operas were on, she was in an apartment with Bruce, Henry, Fabulous, Eddie Bell, and Bruce's girlfriend, Michelle Nelson. The men left while the soap operas were still on. Sometime after 7:00 p.m. Eddie came to the door. As a result of the conversation with Eddie, Sellers and Nelson gathered up their clothes, as well as the clothes of Fabulous and Bruce, and took them downstairs to the parking lot. They waited in the parking lot, and eventually Bruce, Fabulous, and Henry drove up. Sellers, Fabulous, and Henry got into one car; and Eddie, Nelson, and Bruce got into another car. They all drove to Virginia. During the trip both cars pulled into a gas station. Henry got out of the car, went over and talked with Bruce, and returned

to the car with some guns. There were "about four" guns in the car which Sellers was told to hide with her feet. Ultimately, the six people checked into three adjacent rooms in a hotel somewhere in Virginia. At the hotel Ms. Sellers saw that all four men had blood on their clothes. The men removed their bloody clothes and put them in a trash bag, which they dumped somewhere. The group watched television at the hotel, and when a news broadcast reported the murders in a Landover apartment, Bruce, Fabulous, Henry, and Eddie began "dancing, acting like . . . they had won . . . an award for best award or something." They were "parading around, shooting boom, boom, boom" with their fingers. In particular, Sellers testified that Bruce was "dancing around, parading, shooting up in the air" with his fingers. The group stayed in Virginia for about a week, then went to Florida.

While in Florida, the group changed hotels two or three times, and during that time, Sellers was able to observe that a briefcase the men had with them was filled with money. The group then split up and separately traveled to New York. Sellers was with Fabulous when he was arrested in New York. Approximately one month after Fabulous was arrested, Sellers received a call from Bruce who wanted to know whether the police had been to Sellers' house in New York. Ms. Sellers told Bruce that the police had not been to her house and was told by Bruce that if he found out she was lying, she would be dead.

Prince George's County Police Detective Howard Shook testified that Bruce was ultimately arrested in New York, and that he went to New York to interview Bruce. After being informed of his right to remain silent, Bruce agreed to talk to Detective Shook. Bruce was asked if he had seen a reenactment of the crime on the television show "America's Most Wanted." Bruce responded that he had and that it was "pretty close" to being correct.

Federal Bureau of Investigation Agent Gerald Wilkes testified that he performed ballistic tests on some of the weapons, shells, and projectiles, which were recovered and

admitted into evidence. Other evidence introduced by the State supported the jury's findings that Bruce was a principal in the first degree.

In this appeal from his second sentencing proceeding, Bruce makes multiple assertions of error on the part of the trial judge. We will conclude that there was no error and we will affirm Bruce's death sentence. We now address each assertion in turn.

## I.

█ Bruce's first assertion is that the trial court erred by conducting his second sentencing proceeding before a jury without Bruce's express reaffirmation that he still desired a jury sentencing rather than sentencing by the court.[1] Because we believe the trial judge committed no error, we reject this contention.

We first note that a defendant has no federal constitutional right to a jury sentencing in a capital case. *Spaziano v. Florida*, 468 U.S. 447, 460, 104 S.Ct. 3154, 3162, 82 L.Ed.2d 340, 352–53 (1984). The right to a jury at a capital sentencing is entirely statutory. Md.Code (1957, 1992 Repl. Vol., 1992 Supp.) Art. 27, § 413(b). In fact, prior to enactment of the present capital sentencing statute all sentencing, including capital sentencing, was for the court. The statute changed this, providing:

"(b) *Before whom proceeding conducted.*—This [capital sentencing] proceeding shall be conducted:

(1) Before the jury that determined the defendant's guilt; or

(2) Before a jury impaneled for the purpose of the proceeding if:

(i) The defendant was convicted upon a plea of guilty;

---

1. We say "reaffirmation" because both Bruce's trial and first sentencing proceeding were conducted before a jury.

(ii) The defendant was convicted after a trial before the court sitting without a jury;

(iii) The jury that determined the defendant's guilt has been discharged by the court for good cause; or

(iv) Review of the original sentence of death by a court of competent jurisdiction has resulted in a remand for resentencing; or

(3) *Before the court alone,* if a jury sentencing proceeding *is waived* by the defendant." (Emphasis added). Art. 27, § 413(b). The enactment of Art. 27, § 413(b) thus gave the defendant a choice between a jury sentencing and sentencing by the court, but the statute made jury sentencing the preferred mode for the sentencing proceeding by requiring the defendant to waive his right to a jury sentencing. Under the statute, a defendant who does not actively waive his right to a jury sentencing automatically receives one. Presumably, this results from the belief that before the penalty of death is imposed, it is preferable that a twelve-member jury, rather than a single trial judge, reach the conclusion that a death sentence is appropriate—a preference additionally promoted by the requirement that the jury verdict be unanimous. We have since further protected the right to a jury sentencing in a capital case by requiring that a defendant's waiver of a jury sentencing in favor of sentencing by the court be made knowingly and voluntarily. *Jones v. State,* 310 Md. 569, 597, 530 A.2d 743, 757 (1987), *sentence vacated on other grounds,* 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988); *Harris v. State,* 295 Md. 329, 339 n. 1, 455 A.2d 979, 984 n. 1 (1983). Bruce now asks us to extend the requirement of a knowing and voluntary waiver to instances where a defendant chooses a jury sentencing over a court sentencing. This we decline to do.

Different standards exist for assessing the validity of defendants' waiver of rights, depending upon the nature of the right involved. The greatest protection is afforded fundamental constitutional rights under *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In

discussing whether there had been a waiver of the Sixth
Amendment right to counsel, the Court there said:

> "It has been pointed out that 'courts indulge every rea-
> sonable presumption against waiver' of fundamental con-
> stitutional rights and that we 'do not presume acquies-
> cence in the loss of fundamental rights.' A waiver is
> ordinarily an intentional relinquishment or abandonment
> of a known right or privilege." (Citations omitted).

*Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466.
In the case of fundamental constitutional rights like the
right to counsel, the trial judge must make an on-the-record
determination that the defendant's waiver is knowingly and
intelligently made. *Id.,* 304 U.S. at 465, 58 S.Ct. at 1023, 82
L.Ed. at 1467. Other rights to which this high waiver
standard has been applied are the right to a unanimous jury
verdict in a criminal trial, *State v. McKay,* 280 Md. 558, 572,
375 A.2d 228, 236 (1977), and the right to trial by jury,
*Martinez v. State,* 309 Md. 124, 131–34, 522 A.2d 950, 953–
56 (1987); *Adams v. United States,* 317 U.S. 269, 275, 63
S.Ct. 236, 240, 87 L.Ed. 268, 272–73 (1942). For some other
rights, we have held that a defendant's waiver must be
knowing and voluntary, although we do not require the trial
judge to engage in the litany of a full *Zerbst* inquiry. An
example is the right touched upon in this case, the statutory
right to a jury sentencing in a capital proceeding. *Jones,*
310 Md. at 597, 530 A.2d at 757.

Finally, there are numerous lesser rights which may be
validly waived through counsel or by implication without a
knowing and voluntary waiver by the defendant. *See, e.g.,
Henry v. State,* 324 Md. 204, 226, 596 A.2d 1024, 1035 (1991)
(although trial judge discouraged defendant from participat-
ing in bench conferences, defendant's right to be present
was waived by counsel's silence and defendant's acquies-
cence), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118
L.Ed.2d 307 (1992); *Chase v. State,* 309 Md. 224, 235–36,
522 A.2d 1348, 1353–54 (1987) (defendant's right to be
present when evidence was presented by stipulation during
adjudicatory phase of a revocation of probation hearing

may be waived by counsel with the defendant's acquiescence without the personal inquiry of the defendant). *Compare State v. Kenney,* 327 Md. 354, 362–64, 609 A.2d 337, 341 (1992) (no *Zerbst* inquiry required for waiver of the right to 12–person jury) *with Howell v. State,* 87 Md.App. 57, 75–76, 589 A.2d 90, 99–100, *cert. denied,* 324 Md. 324, 597 A.2d 421 (1991) (trial court did not err by refusing to allow defense counsel to waive the right to trial by jury in the absence of the defendant).

Although *Zerbst* itself is not strictly applicable to the instant case because no fundamental constitutional right is implicated, its underlying principles are indeed relevant to our inquiry. Under *Zerbst,* for example, the fundamental constitutional right to a jury trial can be waived if certain safeguards are followed. If, however, a defendant does not effectively waive the right to a jury trial, we assume the defendant is asserting the right to a jury trial. The same principle applies to a criminal defendant's right to counsel. If a criminal defendant appears at trial without counsel, the trial judge is required to determine whether the defendant properly has waived his right to counsel. *Parren v. State,* 309 Md. 260, 266, 523 A.2d 597, 599–600 (1987); *Leonard v. State,* 302 Md. 111, 121–24, 486 A.2d 163, 166 (1985). If, however, the criminal defendant comes to court *with* counsel, the judge need not ask if the defendant wishes to proceed *pro se,* even though a defendant clearly has the right to waive counsel. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Like the constitutional rights to counsel and to jury trial which are protected by *Zerbst,* the statutory right to a jury sentencing, at issue here, may also be waived. The statute makes it clear, however, that unless that right is expressly waived we assume the right is being asserted. If Bruce had asked for a court trial at his capital sentencing, the trial judge would have been required by *Jones* and *Harris* to make certain that he was knowingly and voluntarily waiving his right to a jury trial. But Bruce participated in the jury selection process and gave every indication that he

opted for a jury trial, and therefore the judge was not required to inquire about his waiving a jury.

It is Bruce's position that we should equate a defendant's choice to have jury sentencing with a defendant's choice to *waive* jury sentencing. In taking this position, he characterizes the choice as making an "election" between jury sentencing and court sentencing. Because Bruce views this as an election between two equal sentencing modes, he contends that the trial judge must conduct an inquiry of the defendant regardless of which mode the defendant is seeking. Bruce bases his argument on *Thomas v. State*, 89 Md.App. 439, 598 A.2d 789 (1991), a recent Court of Special Appeals decision addressing a criminal defendant's right to choose between a jury trial and a trial by the court. A portion of *Thomas* quoted *Gilbert v. State*, 36 Md.App. 196, 210, 373 A.2d 311, 320, *cert. denied*, 281 Md. 737 (1977), which stated that " '[i]n this State ... we elect between equal trial modes. We do not waive a favored trial mode (trial by jury) in favor of an inferior or unfavored mode (trial by court). We elect between equally attractive and equally venerable modes of trial.' " *Thomas*, 89 Md.App. at 441, 598 A.2d at 790. We disagree with this classification. *Gilbert* had relied on *State v. Zimmerman*, 261 Md. 11, 273 A.2d 156 (1971), through which we may ultimately trace the "choice of equals" language back to *Rose v. State*, 177 Md. 577, 10 A.2d 617 (1940). In *Rose*, we said that in choosing a court trial over a jury trial, "an equally normal method is elected." *Id.* at 581, 10 A.2d at 619. But despite this language, *Rose* simply held that a criminal defendant may select a trial by court and forego a jury trial. *Id.*

While we by no means suggest that trial by court is an inferior means of trial,[2] we do not agree that the two modes are equivalent for waiver purposes. Prior to 1982, the rule

---

**2.** In fact, as Bruce points out, trial by court may at times be preferable for strategic reasons, as when the only dispute is a point of law, when the issue is highly technical, or where the party believes the jury will be somehow unsympathetic to his cause.

regarding waiver of jury trial was substantially different from present Rule 4–246, and the language of predecessor Rule 741 no doubt contributed to this portrayal of trial modes and the choice between them. The old rule indeed spoke in terms of an election between a jury trial and a trial by court. Former Rule 741 provided that "[a]n accused may *elect* to be tried by jury or by the court. Such *election* shall be made by the accused...." (Emphasis added). Nonetheless, we believe Judge Orth was correct when he said that

> "[w]e do not construe *State v. Zimmerman* as indicating that an accused must "elect" a jury trial or that his right to a jury trial is lost by the *mere* election of a court trial. An accused comes to trial cloaked in the Sixth Amendment right to be tried by a jury, and he may lose that right only upon a waiver of it in the constitutional sense.
>
> We are aware that Maryland Rule 741, as rewritten effective 1 September 1971, now speaks in terms of an 'election' between a court trial and jury trial rather than a 'waiver' of a jury trial. The Rule must be considered in the light of the Supreme Court's construction of the Sixth Amendment jury trial provision. So considered, we think it clear that the 'election' applies only when the accused is entitled to a jury trial, and, when he is so entitled, the right is lost only by a constitutionally effective waiver." (Emphasis in original).

*Smith v. State,* 17 Md.App. 217, 226 n. 11, 301 A.2d 54, 59 n. 11 (1973).

In 1977, Rule 741 was revised and renumbered, and new Rule 735 still retained the "election" language. In 1982, Rule 735 was renamed "Waiver of Jury Trial" and wholly revised to exclude any reference to an "election." Instead, the rule provided that "a defendant having a right to trial by jury shall be tried by a jury unless the defendant *waives* the right...." Md.Rule 735a (emphasis added). The current language, adopted in 1984 as Rule 4–246, also provides that "a defendant having a right to trial by jury shall be tried by a jury unless the right is *waived*...." Md.Rule 4–

246(a) (emphasis added). In *Martinez v. State,* 309 Md. 124, 132–33, 522 A.2d 950, 954 (1987), our first discussion construing Rule 4–246, we said that "[a]s the text of the Rule makes clear, an accused will be tried by a jury, unless he waives that right."

In light of Rule 735's evolution, and the special protection afforded the defendant's right to a jury trial, we reject any notion that the defendant makes an "election" between the two modes of trial or capital sentencing. A defendant of course can secure a court trial by waiving a jury trial. The flaw in calling this an election is quickly made apparent by asking what would happen in the face of a defendant's refusal or inability to "elect." Since Bruce's interpretation necessarily demands an affirmative act by the defendant, i.e., an election, presumably the defendant who does not elect gets no trial at all—a most absurd result. Rule 4–246(a) addresses this exact situation by explicitly providing that trial by jury is required unless a waiver is properly made. Similarly, the capital sentencing statute explicitly provides that a jury sentencing is required unless a waiver is properly made. Art. 27, § 413(b)(3).

In sum, we simply do not believe that the trial judge was required to make an on-the-record determination that Bruce was knowingly and voluntarily proceeding with a jury sentencing. The purpose of this determination is to protect a defendant's important statutory right to have a jury sentencing, not his ability to waive a jury sentencing. We do not equate the two. As a final note, we observe that the indication that Bruce wanted a jury sentencing is especially strong in the instant case. Prior to his first sentencing, he expressly indicated that he wanted a jury sentencing and thereafter never gave any indication that he might wish to change his mind. For the reasons discussed, we reject Bruce's contention that a judge must conduct an on-the-record inquiry to determine whether a defendant in a capital sentencing proceeding knowingly and voluntarily waived the option to be sentenced by the court.

## II. & III.

 Maryland Rule 4–343 is applicable whenever the State has filed a proper notice of intent to seek the death penalty. Md.Rule 4–343(a). That rule requires that the proceedings be bifurcated so that once a defendant has been found guilty of first degree murder, the court must conduct a separate sentencing proceeding. Md.Rule 4–343(b). Bruce had asked the trial judge to subdivide the sentencing proceeding and conduct two separate jury sentencing proceedings, the first on the issue of his principalship in the first degree murder, and the second for the determination of aggravating and mitigating factors and his ultimate sentence. In essence, this would turn a bifurcated proceeding into a "trifurcated" one. He contends that the trial judge erred by denying his motion. We disagree.

We have previously held that the principalship issue may be considered together with the aggravation and mitigation issues, *State v. Colvin*, 314 Md. 1, 17–18 n. 5, 548 A.2d 506, 514 n. 5 (1988), and that it is not error for a trial judge to refuse to order a separate hearing on the principalship issue when asked to do so. *Wiggins v. State*, 324 Md. 551, 578, 597 A.2d 1359, 1372 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1765, 118 L.Ed.2d 427 (1992). We explicitly reaffirmed those holdings in *Booth v. State*, 327 Md. 142, 160, 608 A.2d 162, 170–71, *cert. denied*, —— U.S. ——, 113 S.Ct. 500, —— L.Ed.2d —— (1992). Nothing mandates a separation of the principalship issue, and in fact such a separation would contradict the language of Rule 4–343. "Rule 4–343(e) prescribes the form for jury deliberation of sentence in a capital case. That form places before the jury, *simultaneously*, the issues of principal in the first degree, mitigating and aggravating circumstances, and the ultimate determination...." *Wiggins*, 324 Md. at 578, 597 A.2d at 1372 (emphasis added). In light of our prior decisions and the clear language of the rule, we believe the trial judge was not required to "trifurcate" the proceedings at Bruce's request.

Bruce next contends that even if the trial judge was not *required* to "trifurcate" the proceedings at his request, it was nonetheless within the trial judge's discretion to do so. In *Booth*, the trial judge had refused to "trifurcate" a capital sentencing saying that, under Rule 4–343, "this court is without authority to grant the motion." *Booth*, 327 Md. at 160, 608 A.2d at 170. On appeal, we agreed, holding that "[t]he trial judge did not have discretion to bifurcate the sentencing proceeding in order to separate out the principalship issue. Rule 4–343, and the sentencing form it incorporates, are binding. The rule makes clear that principalship and the other sentencing-related issues are resolved in a unitary sentencing proceeding." *Id.* In light of *Booth*'s clear holding, we believe the trial judge acted properly in denying Bruce's motion to "trifurcate" his sentencing proceeding. There was no error.

## IV.

Bruce next maintains that the judge erred both in giving certain jury instructions and in refusing to give certain other instructions that he proffered. In all, Bruce complains of six discrete jury instruction errors. At the sentencing proceeding, however, Bruce's counsel objected to only one of the six. In addressing the five unobjected to errors, we first look to Maryland Rule 4–325(e), which provides that

"[n]o party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection."

*See Gore v. State*, 309 Md. 203, 207, 522 A.2d 1338, 1339–40 (1987); *State v. Hutchinson*, 287 Md. 198, 202, 411 A.2d 1035, 1037 (1980) (applying Rule 757f, the predecessor of Rule 4–325(e). While there has been some suggestion that in a capital case the Court is less strict about the failure to preserve issues for review, *see Foster v. State*, 305 Md. 306, 316, 503 A.2d 1326, 1331, *cert. denied*, 478 U.S. 1010, 106

S.Ct. 3310, 92 L.Ed.2d 723 (1986); *Johnson v. State,* 292 Md. 405, 412 n. 3, 439 A.2d 542, 547 n. 3 (1982), we emphasize that despite the special character of a capital case, the tried and tested rules of evidence and procedure still apply. Both sides should play by the rules.

The "plain error" provision of Rule 4–325(e), provides that "[a]n appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object." Plain error discretion is invoked only in instances which are "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *Rubin v. State,* 325 Md. 552, 588, 602 A.2d 677, 694 (1992) (quoting *State v. Hutchinson,* 287 Md. 198, 203, 411 A.2d 1035, 1038 (1980)).

When we review the materiality of the error, we consider it "in the context in which it arose." *Hutchinson,* 287 Md. at 203, 411 A.2d at 1038. In the instant case, the five jury instruction errors from which Bruce now appeals do not rise to the level of plain error for perhaps the most basic of all reasons—they were not error at all. Since many of these issues have arisen before and may well arise again in the future, it will be helpful to discuss why there is no error. Therefore, we review each of the five asserted but unobjected to alleged errors and then turn our attention to the sixth asserted error, which was properly preserved for appeal.

### A.

 First, Bruce contends that the trial court erred by failing to give his proposed instruction that ineligibility for parole may be considered as a mitigating factor. His proposed instruction was as follows:

"Your considerations as [to] Mr. Bruce's parole eligibility should he receive a sentence of life imprisonment are relevant and may be taken into account by you in the first instance in determining whether the appropriate sentence is death or life imprisonment. In other words, you may

regard Mr. Bruce's ineligibility for parole as a mitigating circumstance."

We do not find any error in the trial judge's refusal to give this instruction. In *Mack v. State*, 300 Md. 583, 479 A.2d 1344 (1984), we described how this Court would determine whether the trial judge should have given a requested instruction. "In deciding whether the trial court was required to give such an instruction, we must determine whether the requested instruction constitutes a correct statement of the law; whether it is applicable under the facts and circumstances of this case; and whether it has been fairly covered in the instructions actually given." *Id.* at 592, 479 A.2d at 1348. Applying this test, we first observe that the proposed instruction is indeed a correct statement of the law; the capital sentencing statute explicitly includes as recognized mitigating factors "[a]ny other facts which the jury or the court specifically sets forth in writing that it finds as mitigating circumstances in the case." Art. 27, § 413(g)(8). Second, the instruction is certainly applicable under the facts and circumstances of this case. The instruction, however, fails the third part of the test, because it had been fairly covered elsewhere. In the instructions actually given at the hearing, the trial judge said:

"In this case also you have heard evidence that the defendant has been previously sentenced for some of the crimes arising out of the same events for which he is now before you for sentencing. That evidence may be considered by you in deciding what the appropriate sentence shall be in this case, that is, *you may consider his present sentences for this event—criminal event as mitigating circumstances.*" (Emphasis added).

This instruction clearly tells the jury that Bruce's three previously imposed consecutive life sentences without the possibility of parole could be used as a mitigator properly included in its weighing of aggravating versus mitigating circumstances. We find no error in the trial judge's refusal to give a proposed instruction which sought to convey the

same information to the jury. Even absent the instruction, the fact that Bruce's ineligibility for parole could be used as a mitigating factor was arguably covered elsewhere. Section IV, Paragraph 8 of the Findings and Sentencing Determination form set out in Rule 4–343(e) explicitly calls the jury's attention to a catch-all category of mitigators and provides space for it to indicate whatever mitigators it may have found, whether unanimously or otherwise. Paragraph 8 provides, in part:

(a) We unanimously find by a preponderance of the evidence that the following additional mitigating circumstances exist:

[space provided]

(b) One or more of us, but fewer than all 12, find by a preponderance of the evidence that the following additional mitigating circumstances exist:

[space provided]

The jurors were thus capable of considering whatever nonstatutory mitigating factors they saw fit to consider, including Bruce's ineligibility for parole. The trial judge did not err in refusing to give the proposed instruction.

## B.

 Bruce's second asserted jury instruction error concerns the trial judge's comments regarding jury unanimity on finding mitigating circumstances. The judge instructed the jury as follows:

"In considering the mitigating circumstances you should, of course, strive towards unanimity concerning the presence or absence of each mitigating circumstance. It is your duty to consult with one another and to deliberate with the view to reaching an agreement as to whether a particular mitigating circumstance exist[s], if you can do so without violence to your own individual judgment. Though you should strive toward reaching a unanimous verdict as to the existence of each mitigating circumstance, you are instructed also that the burden of proof operates with respect to each juror individually, and you

> must not surrender your honest conviction as to the existence of a mitigating circumstance solely because of the opinion of your fellow jurors."

Bruce contends that the instruction contravenes *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). In *Mills,* the Supreme Court considered an older version of the Findings and Sentencing Determination form, one based on a previous version of present Rule 4–343. The Court held that the form was unconstitutional because reasonable jurors could have construed it to require, when combined with the instructions given by the trial court, a unanimous finding that a mitigating circumstance existed before it could be included in the balancing of aggravators versus mitigators. Before the case reached the Supreme Court, this Court in 1987 promulgated the current Findings and Sentencing Determination form which explicitly directs the jurors to identify mitigating factors on which they have not unanimously agreed, and to take these into account in the weighing process. Maryland Rule 4–343(e) (amended July 27, 1987, effective Aug. 17, 1987). If we believed that the jury instruction in the instant case might have left the jurors with the impression that they must unanimously find a mitigating factor in order for it to be included in the weighing process, we might be obliged to reverse. However, "[i]t is well settled that 'when [an] objection is raised to a court's instruction, attention should not be focused on a particular portion lifted out of context, but rather its adequacy is determined by viewing it as a whole.' " *Collins v. State,* 318 Md. 269, 283, 568 A.2d 1, 8 (quoting *Poole v. State,* 295 Md. 167, 186, 453 A.2d 1218, 1228 (1983), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990) and *State v. Foster,* 263 Md. 388, 397, 283 A.2d 411, 415 (1971), *cert. denied,* 406 U.S. 908, 92 S.Ct. 1616, 31 L.Ed.2d 818 (1972)); *see also Bowers v. State,* 298 Md. 115, 159, 468 A.2d 101, 124 (1983) ("Legions of our cases have held that, when an objection is raised to a court's instruction, attention should not be focused on a particular portion

lifted out of context, but rather on the jury instruction as a whole.").

We believe that Bruce indeed lifts the instruction out of context. When viewed as a whole, the instruction is proper. Bruce contends that, in light of the instruction as given, "where a small number of jurors were convinced of the existence of a mitigating circumstance, they would be quite likely to abandon their conviction in the interest of obeying the judge's instruction and 'striv[e] for unanimity.'" We believe Bruce overemphasizes the "strive towards unanimity" language, ignoring the trial judge's admonishment that jurors should only seek unanimity "if you can do so without violence to your own individual judgment." The judge instructed the jurors that "the burden of proof operates with respect to each juror individually, and you must not surrender your honest conviction as to the existence of a mitigating circumstance solely because of the opinion of your fellow jurors."

We also focus on the Findings and Sentencing Determination form which guided the jurors in their consideration of statutory and non-statutory mitigating factors. One option for each mitigating factor, option "(c)", is the following:

[ ](c) After a reasonable period of deliberation, one or more of us, but fewer than all 12, find by a preponderance of the evidence that the above [mitigating] circumstance exists.

It appears that the judge's reference to unanimity was merely an attempt to encourage the jurors to engage in the "reasonable period of deliberation" referenced in option "(c)". We also note that when reviewing the form section-by-section with the jurors, the judge noted that the reason option "(c)" exists is "to make certain that each of you will give individual consideration to *any mitigating circumstance you personally find* as well as to any mitigating circumstances unanimously found." (Emphasis added). The judge further noted that "the findings recorded in section three [the mitigation section] need not be unanimous." Certainly, taken as a whole, the instruction was proper. We find no error by the trial judge.

## C.

Bruce's third assignment of jury instruction error concerns the trial judge's instruction on the reasonable doubt standard. She instructed the jury as follows:

"A reasonable doubt, ladies and gentlemen of the jury, for those of you who have not served as jurors before in any criminal case is a—it requires such proof that would convince you ladies and gentlemen of the truth of a fact to the extent that you would be willing to act upon that belief without reservation in an important matter in your own personal or business affairs."

Bruce contends that the explanation was inadequate, in large part because the trial judge did not make any reference to "moral certainty." There is no merit to this contention. We need look no further than the cases which Bruce himself cites. These cases define reasonable doubt as

"such evidence as you would act upon in a matter involving important affairs in your life or your business or with regard to your property. If the evidence is sufficient that you would act upon it in a very important matter in your own lives, then it is sufficient to convict in a criminal case.

*Lansdowne v. State,* 287 Md. 232, 240, 412 A.2d 88, 92 (1980) (quoting *Lambert v. State,* 193 Md. 551, 558, 69 A.2d 461, 464 (1949)). We further stated:

"[i]t is not erroneous to instruct the jury that evidence is sufficient to remove a reasonable doubt when it convinces the judgment of an ordinarily prudent man of the truth of a proposition with such force that he would act upon that conviction without hesitation in his own most important affairs."

*Id.* at 241, 412 A.2d at 92–93 (quoting *Lambert,* 193 Md. at 560–61, 69 A.2d at 465). In *Bowers v. State,* 298 Md. 115, 157, 468 A.2d 101, 122–23 (1983), we found no error when the trial judge instructed the jury that

"a reasonable doubt is a doubt that is founded upon reason. It is such a doubt as would cause a reasonable

person to hesitate to act in the graver or more important transactions in his life.

Thus, if the evidence is of a character as to persuade you of the truth of the charges against the Defendant, with the same force that would be sufficient to persuade you to act in the more important transactions in your life then you would conclude that the State has proven aggravating circumstances beyond a reasonable doubt.

If, on the other hand, you could not act based on that evidence in the more important transactions in your life, then you would conclude that the State had not met the burden of proof and therefore not proven the aggravating circumstances."

We perceive no material difference between these standards we approved previously and the reasonable doubt standard that the trial judge enunciated at Bruce's sentencing. Bruce also complains of the brevity of the instruction; however, we believe that the trial judge adequately communicated the reasonable doubt standard. Therefore, we find no reversible error in this instruction.

### D.

██ Bruce next objects to the trial judge's instruction regarding the standard of proof for finding mitigating circumstances. When discussing the mitigating circumstances section of the Findings and Sentencing Determination form with the jury, the trial judge instructed them that

"[m]itigating circumstances must be proven but need not—no mitigating circumstances must be proven by what we call a preponderance of the evidence, and to prove something by a preponderance of the evidence means to prove that something is more likely so than not so."

Bruce does not dispute that mitigating circumstances must be proven by a preponderance of the evidence. Art. 27, § 413(g). He contends, however, that the jury could have interpreted the above instruction as an instruction to apply the stricter reasonable doubt standard to prove mitigating

circumstances. Bruce manages this strained interpretation by focusing on the sentence fragment "no mitigating circumstances must be proven by what we call a preponderance of the evidence." From this, Bruce contends that, since the jurors heard the words "no mitigating circumstances must be proven by ... a preponderance of the evidence," they might be confused and conclude that Bruce had to prove a mitigating factor under the reasonable doubt standard. We disagree with this contention.

First, the State offers a plausible explanation for the quotation from the transcript. It argues in its brief that the judge's use of the word "no" was meant as a "midsentence interruption correcting the court's *prior* words, 'but need not,' rather than as an integral part of the court's *subsequent* clause...." (Emphasis in original). This is a reasonable explanation for what would otherwise be a nonsensical statement by the trial judge. The explanation is reinforced by the fact that trial counsel did not raise an objection. Also, the trial judge more than adequately addressed the proper standard in the balance of her instructions. The portions of the instructions that Bruce cites appear in the midst of the judge's instructions to the jury on the structure and use of the Findings and Sentencing Determination form and were given just before a lengthy discussion of the preponderance standard as applied to mitigating circumstances.

Finally, the sentencing form submitted to the jury provides for each mitigating factor that the jury check one of three boxes, as follows:

*(Mark only one.)*

___ (a) We unanimously find by a preponderance of the evidence that the above circumstance exists.

___ (b) We unanimously find by a preponderance of the evidence that the above circumstance does not exist.

___ (c) After a reasonable period of deliberation, one or more of us, but fewer than all 12, find by a preponderance of the evidence that the above circumstance exists.

We fail to see how it could be any clearer that the appropriate standard for proof of mitigating circumstances is the preponderance standard. Taking the instruction as a whole, especially when combined with language of the Findings and Sentencing form given to the jury, we do not believe the jury could have concluded it was to apply the reasonable doubt standard to its findings of mitigating circumstances. We therefore reject this assertion of error.

### E.

■ Bruce next contends that the trial judge erred in instructing the jury on the parties' burdens of proof at the sentencing. Again, Bruce has taken out of context isolated remarks from the transcript to argue that the trial judge acted improperly. Again, we must reject his contention.

At issue is the judge's explanation to the jury that "mitigation is another word for lessening. The State has to prove aggravating. That's increasing the penalty from life imprisonment to either life without parole or death. And the defendant introduces evidence to establish that mitigating factors exist to bring it back down to life imprisonment...."

Bruce argues that this "advisement incorrectly inflated the effect of the finding of an aggravating circumstance, and therefore imposed a burden upon the defense greater than the law provides for." In particular, he focuses on the trial judge's use of the words "bring it back down to life imprisonment," claiming that this portion of the instruction implies that the death penalty is mandatory if the defendant fails to introduce evidence of mitigating circumstances. Bruce notes that "the existence of an aggravating factor does *not* establish, in and of itself, that a death sentence is appropriate." (Emphasis in original). This, Bruce continues, would violate the principles in *Foster v. State*, 304 Md. 439, 499 A.2d 1236 (1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986).

In *Foster*, the defendant asserted that the death penalty statute itself was unconstitutional because a jury, finding a

single aggravating circumstance in a case where the defendant had not proven mitigating circumstances, would be obliged to return a death sentence even "where the sentencer is unconvinced that death is the appropriate punishment." *Id.* 304 Md. at 473, 499 A.2d at 1253. We rejected this interpretation, saying

"[a] sentencing authority, unconvinced that death is appropriate, may list as a mitigating circumstance whatever factor or factors may have led to this conclusion, irrespective of what the defendant produced or argued. If the sentencing authority perceives anything relating to the defendant or the crime which causes it to believe that death may not be appropriate, it may treat such factor as a mitigating circumstance and decide that it outweighs the aggravating circumstances. Therefore, as we have repeatedly stated, the Maryland statute is not a mandatory death penalty law."

*Id.* at 474–75, 499 A.2d at 1254. For basically the same reasons expressed in *Foster* with regard to the statute itself, we believe the trial judge's instruction did not erroneously imply that the death penalty was mandatory. Rather, it correctly reflected the law that a finding of aggravating circumstances, in the absence of any juror finding either statutory or non-statutory mitigators, will result in a death sentence as per the sentencing form.

█ If there was anything objectionable in this portion of the instruction, it was that the trial judge only referred to the *defendant's* ability to introduce mitigating circumstances. In fact, were this the only instruction given regarding mitigating circumstances, there might be cause for concern. As we indicated in *Foster*, the ability of the jury to consider *any* factor as a mitigator, not only those introduced by the defendant, is crucial to the non-mandatory character of the death penalty statute. The trial judge, however, properly instructed the jury when she said soon thereafter:

"For purposes of this sentencing proceeding a mitigating circumstance is anything about the defendant or about

the facts of the case that in fairness or in mercy may make the death sentence an inappropriate penalty for this defendant.

\* \* \* \* \* \*

In determining whether or not there are any mitigating circumstances, consider all of the evidence presented regardless of who introduced it.

\* \* \* \* \* \*

You need not find a statutory mitigating circumstance in order to impose a sentence of life imprisonment or life without parole. Nothing in the law forbids you from extending mercy out of compassion or belief that life imprisonment or life without parole is sufficient punishment under all of the circumstances."

Since we review jury instruction error by looking at the entire instruction, and not a particular portion in isolation, *Collins,* 318 Md. at 283, 568 A.2d at 8, we believe that the instructions set out directly above fully overcome any potential error in the instruction that Bruce cited. The judge did not commit any error.

### F.

Of the six asserted jury instruction errors, Bruce properly preserved only one for appeal. Among the instructions that Bruce requested, but which the trial judge refused to give, was the following:

"I advise you that if for any reason you are unable within a reasonable period of time to reach a unanimous judgment as to the balancing required by Section IV of the form, I will sentence Kirk Bruce to life imprisonment."

Bruce objected on the record to the judge's refusal to give this proposed instruction, which apparently has its basis in § 413(k)(2) of the death penalty statute. Section 413(k)(2) provides that "[i]f the jury, within a reasonable time, is not able to agree as to whether a sentence of death shall be imposed, the court may not impose a sentence of death." Unlike the preceding five assertions of error, Bruce proper-

ly preserved this assertion for appeal. We find that the trial judge did not err. The propriety of this exact instruction was before us in *Oken v. State*, 327 Md. 628, 612 A.2d 258 (1992), and there we held that the court was not required to give it. 327 Md. at 642–43, 612 A.2d at 265. We have repeatedly rejected the notion that a judge must instruct the jurors in a capital sentencing proceeding prior to their deliberations that if they cannot agree on sentencing within a reasonable time, a life sentence would be imposed. *See Booth v. State*, 327 Md. at 153–54, 608 A.2d at 169; *Grandison v. State*, 305 Md. 685, 771, 506 A.2d 580, 623, *cert. denied*, 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986); *Calhoun v. State*, 297 Md. 563, 593–95, 468 A.2d 45, 58–60 (1983), *cert. denied*, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984).

In *Calhoun*, we noted that

"[g]iving the [proposed] instruction to the jury before deliberation could prompt someone to hold out for just a bit more than a reasonable time to insure that the death penalty was not imposed. It likewise could cause a jury to rush through its deliberations to avoid being called back by the court and told that because a reasonable time had passed without a verdict the sentence would be life imprisonment. The statute is a mandate directed to the court, not the jury. As the jury here reached its decision within a reasonable time, no instruction was required."

*Id.* at 595, 468 A.2d at 60. The jury here reached its decision within a reasonable time. No such instruction was required, and the trial judge did not err in refusing to give it.

### V.

■ Bruce's next assignment of error involves the testimony of Kenneth Clee at the sentencing proceeding. Clee testified for the State about Bruce's admissions that Bruce was involved in some killings in Maryland and had "robbed somebody and took some drugs from them." Clee first described his encounters with Bruce to police after being

arrested for attempted armed robbery. Clee was on parole at the time of his arrest, and a potential conviction meant that Clee might ultimately return to jail for a parole violation. Because Clee was testifying in exchange for leniency by the authorities, defense counsel sought to demonstrate that Clee was biased and had motive to falsify his testimony. Defense counsel sought to bring this out through cross-examination:

Q: You were facing a lot of time, weren't you?

A: Yes.

Q: In fact you were facing somewhere in the neighborhood of 8 years or more, weren't you?

A: No.

Q: You were not facing more than 8 years?

A: No.

Q: How much backup time were you facing then?

THE STATE: Objection.

THE COURT: Sustained.

Q: But you did know because you were arrested for armed robbery at the time you were on parole there was a good possibility you were going back to jail; is that right?

A: Yes, I knew that.

Q: So to help yourself out you told the police officer this story; is that correct?

A: No, that's not the reason.

Q: You want to be a nice citizen and come forward?

A: No.

Q: So you wanted to help yourself out?

A: I couldn't.

Bruce contends that the court's sustaining of the State's objection to the question about Clee's backup time improperly "restricted" his ability to cross-examine Clee adequately. To this end, Bruce reminds us of the importance of cross examination and the right of a criminal defendant to cross-examine witnesses regarding matters relating to a witness' potential bias, interest, or motive to falsify. *See*

*Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 682–83 (1986).

We agree that wide latitude must be given to a criminal defendant to establish bias or motive of a witness. *Smallwood v. State,* 320 Md. 300, 307–08, 577 A.2d 356, 359 (1990). The trial judge, however, still has discretion to determine whether particular evidence is relevant to the issue of bias or motive. *White v. State,* 324 Md. 626, 639–40, 598 A.2d 187, 192 (1991); *see* 1 *McCormick on Evidence* § 39, at 134 (J. Strong ed., 4th ed. 1992) (In the context of determining whether witness has potential bias "[t]he trial court has a great deal of discretion in deciding whether particular evidence indicates partiality."). Clee had already admitted before the objection was made that he was on parole at the time of his New York arrest and faced "a lot" of backup time in connection with his apparent parole violation. Disclosing to the jury the exact amount of incarceration Clee faced would have cast little additional light on the issue at hand, i.e., his bias and motive to falsify his testimony. Therefore, we believe that it was not an abuse of discretion for the trial judge to sustain the State's objection to this question. We might add, however, that we believe the better ruling would be to overrule the State's objection and allow the witness to answer the question.

 We also observe that if the evidence was erroneously excluded, such exclusion was harmless. The point which Bruce's counsel sought to extract from Clee on cross-examination was brought out in recross just minutes later, when Clee said "there is nothing nobody could have did anyway because I was arrested with the gun, I was going to do more than five years anyway." The jury was thus told that Clee recognized he had "a lot of" backup time which was more than five but less than eight years. We have previously held that "[i]f evidence is erroneously excluded at one point in a trial but nonetheless is admitted without objection at another point in the trial, the erroneous exclusion is nonprejudicial." *Mack v. State,* 300 Md. 583, 603, 479 A.2d 1344, 1353 (1984); *see also Watkins v. State,*

328 Md. 95, 99, 613 A.2d 379, 380–81 (1992) ("the fact sought to be elicited was ultimately placed before the jury, and there was no error in connection with the court's ruling concerning the cross-examination of [the witness].") As Bruce's counsel ultimately elicited the substance of testimony which was excluded shortly before, any error was harmless and provides no basis for reversal.

## VI.

Another witness for the State who provided testimony damaging to Bruce was Colleen Grady. During cross-examination, Bruce's counsel sought to elicit testimony that Grady had been convicted of carrying a handgun. The State objected. The court sustained the objection which Bruce now claims "restricted" his right to cross-examination. The colloquy between Bruce's counsel and Grady was as follows:

Q: Now [the prosecutor] asked you about the fact that you were on probation now for drug distribution, are you not?

A: Yes, I am.

Q: In fact you pled guilty to that charge, did you not?

A: Yes, I did.

Q: In fact you were looking at 20 years, were you not?

A: Yes, I was.

Q: In fact you only served 34 days, isn't that a fact?

A: Yes.

Q: And, of course, you're not benefitting by being here today, are you?

A: No, I'm not.

Q: You also in connection with [a drug conviction], you were convicted of carrying a gun, were you not?

STATE'S ATTORNEY: Objection and move to strike.

THE COURT: Approach the bench.

(Thereupon, counsel and the defendant approached the bench and conferred with the court, as follows:)

DEFENSE COUNSEL: Your Honor, she testified at the last trial about carrying this .22 weapon. She testified and admitted it. Its in the transcript. If she says something different here, its solely to test her credibility.

THE COURT: Was she convicted of it?

DEFENSE COUNSEL: Yes, she was.

\* \* \* \* \* \*

THE COURT: I don't think that's a proper conviction for cross-examination, her ability to carrying the weapon, right?

DEFENSE COUNSEL: Your Honor, it goes to the fact that it was in the same transaction with regard to the drugs.

THE COURT: Uh-uh.

DEFENSE COUNSEL: We're talking about drugs and weapons here.

THE COURT: Uh-uh. You're using it as a conviction to impeach her credibility, right?

DEFENSE COUNSEL: No. I'm showing that she was a part of their organization, that she was carrying one—she was carrying a gun and she was a member of Chief's organization.

THE COURT: Your question was improper. You may have been able to whittle it through in a different manner. The way you asked it was improper. Objection sustained.

STATE'S ATTORNEY: Move to strike.

(Open Court)

THE COURT: Jury will disregard the question about a gun.

The precise purpose for which Bruce's counsel sought to elicit information about the handgun conviction never emerged at the proceeding. As the transcript indicates, Bruce's counsel first suggested that she was hoping to impeach Grady should she deny the conviction, as Grady had already admitted the conviction at the previous trial. Then, when asked directly by the court for the purpose of

the handgun question, Bruce's counsel stated it was to show "that [Grady] was a part of [the victims'] organization," without ever making clear to the court the ultimate aim of such a showing.

The State argues that Bruce did not adequately disclose why the information sought is admissible. A party must clearly proffer his theory to the trial court in order to challenge on appeal the sustaining of objections to those questions. *Mills v. State,* 310 Md. 33, 45–46, 527 A.2d 3, 9 (1987), *sentence vacated on other grounds,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Even assuming that there was adequate indication that the inquiry was related to Grady's role in the victims' drug organization, it was within the trial judge's discretion to appraise the relevance of the question. The trial judge has wide discretion in determining whether particular evidence is relevant to the issue of bias or motive. *White,* 324 Md. at 639–40, 598 A.2d at 192; 1 *McCormick* § 39, at 134. Grady had already admitted that she had received a lenient sentence. She had previously acknowledged her ties to the victims' drug organization. The handgun violation shed no additional light on the issues, and we cannot say that excluding the testimony was an abuse of discretion.

## VII.

Bruce's final assignment of error concerns the trial judge's admission of Kenneth Clee's testimony regarding Bruce's lack of remorse after the killings. The following exchange took place during the State's direct examination of Clee:

[STATE'S ATTORNEY]: Okay. When you overheard the defendant and Mark talking about the murders, did they seem concerned?

[DEFENSE COUNSEL]: Objection.

THE COURT: Sustained. Rephrase.

Q: Did they—well other than that they were just talking, what was their attitude or their demeanor? How were they behaving when they were talking about it?
[DEFENSE COUNSEL]: Objection.
THE COURT: Do you know what the word demeanor means?
A: What you mean, like hear or something like that?
THE COURT: Rephrase.
Q: Do you know what the word behavior means?
A: Yes.
Q: How were they behaving when they were talking about it?
A: It wasn't like they cared or nothing. I mean, just—
[DEFENSE COUNSEL]: Objection, move to strike.
THE COURT: Overruled. Motion denied.

As the record indicates, Bruce's counsel clearly objected *after* Clee stated that "[i]t wasn't like they cared or nothing." The Maryland Rules provide, however, that "[a]n objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived...." Md.Rule 4-323(a). Therefore, "[i]f opposing counsel's question is formed improperly or calls for an inadmissible answer, counsel must object immediately. Counsel cannot wait to see whether the answer is favorable before deciding whether to object." 5 L. McLain, *Maryland Evidence* § 103.3, at 17 (1987); *Moxley v. State,* 205 Md. 507, 515, 109 A.2d 370, 373 (1954).

The strict rule that an objection made at an inappropriate time will waive the objection, however, will give way when "the question is unobjectionable, but the answer includes inadmissible testimony which was unforeseeable from the question." 5 L. McLain, *Maryland Evidence* § 103.3, at 18; *Moxley,* 205 Md. at 515, 109 A.2d at 373; *see also Klecka v. State,* 149 Md. 128, 132, 131 A. 29, 30 (1925) (objection need not be made before answer if " 'the inadmissibility was due not to the subject of the question, but to some feature of

the answer.' "). In these circumstances, objecting counsel may move to strike the witness's response immediately after the grounds for objection have become apparent, as Rule 4–323(a) provides. The question in the instant case, then, is whether or not Bruce's counsel could or should have known from the question that the answer would be objectionable. We believe that Bruce's counsel should have been able to anticipate the type of answer called for by the question and thus should have been able to perceive grounds for an objection as soon as the question was asked—before the answer. We shall elaborate.

First, the question itself was clear: "How were they behaving when they were talking about it?" The question asked Clee to tell the court how he recalled Bruce behaving when discussing the murders. Also, just before the question and answer complained of, the prosecutor had asked Clee the following:

Q: Okay. Did you ever overhear Mark and the defendant talking about these murders?

A: Yes. Yes.

Q: And when you would overhear them talking about these murders, what was their attitude? What were they acting like?

And later:

Q: Okay. When you overheard the defendant and Mark talking about the murders, did they seem concerned?

Then followed the question and answer about which Bruce now complains. In light of the dialogue leading up to this question and answer, we do not believe that Bruce can fairly claim his counsel was unable to anticipate the nature of the answer from the nature of the question. Counsel also should have been aware of the testimony of Clee from Bruce's first trial, in which the prosecutor on direct examination questioned Clee regarding the same circumstances:

Q: Mr. Clee, what did you hear?

A: They had a little joke amongst each other about how the guy got murdered or how they shot him, how he screamed or something like that.

This reinforces our view that Bruce's counsel should have been able to anticipate the nature of the response and make his objection in advance of Clee's answer.

Even if the objection had been properly made and preserved for appeal, though, we cannot say that the trial judge erred in overruling the objection. Bruce contends that the answer was objectionable as irrelevant opinion testimony of a lay witness. Alternatively, he contends that its relevance was outweighed by its prejudicial effect. We reject both these contentions.

Although non-expert opinions have historically been excluded from evidence in areas where only an expert could reach a rational conclusion, some lay opinions which are derived from first-hand knowledge, are rationally based, and are helpful to the trier of fact are admissible. 6 McLain, *Maryland Evidence* § 701.1, at 192–95 (1987) (citations omitted); *accord* Fed.R.Evid. 701. It has been suggested as the overriding principle that "opinions of laymen should be rejected only when they are superfluous in the sense that they will be of no value to the jury." 1 *McCormick on Evidence* § 11, at 44 (J. Strong ed., 4th ed. 1992) (citing 7 Wigmore, *Evidence* § 1918 (Chadbourn rev. 1978)). In the past, we have held that a lay witness with first-hand knowledge may testify that another person was angry, *Lawson v. Ward,* 153 Md. 93, 98, 137 A. 479, 480–81 (1927) (admitting evidence that testator became angry when kidded about certain matters), or was nervous, *Galusca v. Dodd,* 189 Md. 666, 669, 57 A.2d 313, 314 (1947) (police officers could testify that plaintiff was in "very nervous condition"). We can see no difference between a first-hand observation that a person is angry or nervous and an observation that a person seemed unconcerned about something, which was the substance of Clee's testimony about Bruce.

■ As for the question of relevance, the trial judge certainly could have found the issue of lack of remorse relevant to the sentencing. Maryland makes admissible at a capital sentencing a presentence investigation report or any other reliable evidence that the court deems of probative value and relevant to sentence, provided the defendant is accorded a fair opportunity to rebut any statements. Art. 27, § 413(c)(1)(iv) & (v); *Hunt v. State*, 321 Md. 387, 431, 583 A.2d 218, 239 (1990). We have in the past found admissible a defendant's spraying contents of a bottle, apparently containing human waste, on a correctional officer. *State v. Calhoun*, 306 Md. 692, 725–29, 511 A.2d 461, 477–79 (1986), *cert. denied*, 480 U.S. 910, 107 S.Ct. 1339, 94 L.Ed.2d 528 (1987). We have also admitted evidence that a defendant committed multiple institutional infractions, *Collins v. State*, 318 Md. 269, 294–95, 568 A.2d 1, 13–14, or plotted escape from custody, *Hunt*, 321 Md. at 430, 583 A.2d at 239.

It is also curious that Bruce now claims the issue of remorse is irrelevant when in his brief allocution before the jury, Bruce began by indicating that he now felt remorse: "As I was saying, I wanted you all to know that I am sorry for all of them that have been killed. I am kind of asking you all to have some mercy and spare my life."

The decisions on the relevance of evidence in the instant case rested in the sound discretion of the trial court and will not be reversed absent a showing that such discretion was clearly abused. *Thomas v. State*, 301 Md. 294, 317, 483 A.2d 6, 14 (1984), *cert. denied*, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985).[3] As the trial judge could have

---

**3.** We might also note that if there was error in admitting Clee's testimony on Bruce's behavior, this error would be harmless in light of the testimony of Jacqueline Sellers. Sellers was found unavailable for the sentencing proceeding, but her testimony from Bruce's first trial was read into evidence on behalf of the State. She testified that Bruce was "dancing around, parading, shooting up in the air with [his] fingers" when the television news carried the story of the murders. Bruce failed to raise this issue on appeal.

found the evidence regarding lack of remorse relevant, we find no abuse of discretion here.

## VIII.

Finally, we conclude that there was evidence to support the jury's finding of a statutory aggravating circumstance under Art. 27, § 413(d), in this case that Bruce committed more than one offense of murder in the first degree arising out of the same incident. Art. 27, § 413(d)(9); Art. 27, § 414(e)(2). We also conclude that the evidence supports the jury's finding that the aggravating circumstance outweighed the mitigating circumstances also found by the jury. Art. 27, § 414(e)(3). And, we conclude that Bruce's death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Art. 27, § 414(e)(1).[4]

In light of these determinations and our findings above that there was no reversible error committed at Bruce's sentencing proceeding, we affirm the sentence of death imposed by the jury.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.

ROBERT M. BELL, Judge, dissenting.

In part IV.F. of its opinion, the majority reiterates what it has held two times in the very recent past, *see Oken v. State,* 327 Md. 628, 612 A.2d 258 (1992) and *Booth v. State,* 327 Md. 142, 608 A.2d 162 (1992), that a sentencing jury need not be informed that its failure to reach an unanimous sentencing decision is a perfectly acceptable result. I filed

---

4. In the past, we have also been obliged under former Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 414(e)(4) to determine whether the sentence of death is disproportionate to the penalty imposed in similar cases. Section 414(e)(4) was deleted from the statute effective October 1, 1992. *See* Chapter 331 of the Acts of 1992. Thus, we no longer need undertake the proportionality review.

dissenting opinions in both *Oken* and *Booth.* For the reasons set forth in those cases, I again dissent.

It continues to escape me how, at the same time, it can be an acceptable result, prescribed by the Legislature, *see* Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 413(k)(2), for a capital sentencing jury not to agree as to the ultimate sentence, with the result that death may not be imposed as the sentence, and that jury be prohibited from knowing that it is. If the ultimate decision in a capital sentencing may be determined by an inability to agree, I do not understand how resolution of one, or more, of its parts must be determined on a different standard. To instruct the jury as the majority holds is permitted will require capital sentencing instructions to be misleading and inconsistent with the legislative directive. This Court ought not bless misleading jury instructions, especially in capital cases.

I am not at all sure that the petitioner's contention, addressed by the majority in part IV.B., lacks merit. I share the petitioner's view that the instruction given by the trial judge, even taken as a whole, creates a real, and substantial, possibility that the jurors may be left with the impression that they must *unanimously* find a mitigating factor before it may be included in the weighing process. Op. at 613–15. In this case, however, one or more, but fewer than 12, of the jurors found three mitigating circumstances to exist, as follows: (1) the unlikelihood that the defendant would engage in further criminal activity that would constitute a continuing threat to society; (2) severe mental distress inflicted upon the defendant's daughter and immediate family and (3) "[t]hree life sentences without parole + 130 years + one life sentence." But for the fact that, by its verdict, the jury indicated that it was not misled by the instructions, I would reverse on this point, as well.